May it please the court. My name is Nina Perales and I will argue for the Gonzalez appellants. The clock is set so that I will reserve four minutes for rebuttal. The clock just goes. Thank you, your honor. Whether it was green or yellow is yours if you're on red territory. You may have it, your honor. Well, I may dispense it, but it's a matter of grace. Proposition 200 has resulted in the rejection of over 31,000 voter applicants. Excuse me, are you splitting time with? Yes, I am with Mr. Greenbaum for ITCA appellants. You watch your time. I'm sorry. Let's set it back to 20 minutes so we not have lost any time in these preliminaries. Go ahead. Thank you, your honor. Proposition 200 has resulted in the rejection of over 31,000 voter applicants, a dramatic impact felt across the state. For several reasons, Proposition 200 offends federal law. I will argue first that the National Voter Registration Act preempts a portion of Proposition 200. Can you start even before you get there? I'm really struggling with the law of the case versus law of the circuit issue. There is a decision that says NVRA does not preempt the state law, and so what are we supposed to do about that? Your honor, that decision of the previous panel is not subject to the law of the case doctrine, which is discretionary. This court is not bound by that decision because it is clearly erroneous. The previous panel misread the statute. The previous panel held that Arizona may use its own state form in the alternative to the federal form. That might get you past law of the case, but it doesn't get you past law of the circuit, which is a much stronger doctrine. It's a published opinion. Law of the case is an order in the case, which is binding on future decision makers in the same case. But once the opinion is published, it is binding on all future panels, including our panel, unless overruled in bank, unless Supreme Court overrules it. So how do you get past law of the circuit? We contend also, Your Honor, that the court didn't address the federal mandate in the NVRA that states accept and use the federal form. If you look at the disposition of the previous panel on this question, which is very short, it addresses the state's option that in addition to accepting the federal form, the state may promulgate its own form and use that for mail registration. That is what the previous panel addressed. And to the extent that there is law of the circuit, it is that the state is permitted under. What do you make about this language here on page 1050? It says the language of the statute does not prohibit limitation requirements. Indeed, the statute permits states to require such identifying information as is necessary to enable election officials to assess the eligibility of an applicant. The NVRA clearly conditions eligibility to vote on United States citizenship. Yes, Your Honor, that is an examination of Section 4A2 of the NVRA, which permits states to promulgate their own form in addition to the mandate to accept the federal form. And it is also an examination of Section 7, which talks about the things that the state should put in its own form if it does that, in addition to accepting the federal form. What that language does not address is the critical core mandate of the NVRA in Section 4A1 that states must accept and use the federal form and may, in addition to. In fact, the Court held exactly the opposite in the earlier panel, holding that states may either use the federal form or, in the alternative, use a state form. That is not the language of the statute. Let's assume that this prior panel decision read the statute wrong and their interpretation is wrong, just for purposes of argument. If this is binding on us as law of the circuit, I guess I'm having trouble seeing how we could not reach the same conclusion. We're just bound by it. And so it seems to me the only way we would not be bound of it is if the exception to the law of the case doctrine, in other words we say we have the discretion because it's a decision in the same case, to put it aside if it's clearly erroneous. So it seems like that would be the only way to get around it. And so it would be clearly erroneous. Let's assume that it's correct, that that is clearly erroneous, and it works to manifest injustice. Can you address those two points as to why, assuming that we determine we have the discretion to set it aside under the law of the case exception, why it meets those exceptions? Yes, Your Honor. We would contend that because it doesn't truly address the federal mandate in Section 4A1 that even as law of the circuit it would not be binding because it is limited to Section 4A2 of NVRA and Section 7. However, with respect to it being clearly erroneous, as I have mentioned, the NVRA is split into two separate components with respect to the mail voter registration provisions. Section 4A1 first requires the state to accept and use the federal form, the federal postcard, Your Honor, the simple uniform postcard that can be picked up anywhere in the country and submitted for voter registration in congressional elections. Section 4A2, a separate piece, says, in addition to accepting and using the federal postcard, states may devise and use their own mail registration form. What Arizona cannot do is layer its own state requirements on top of the federal form because it is required in this key provision to accept and use the federal form. Thus, it may not use its own state form to the exclusion of the federal form. It may not refuse to accept and use the federal form because of its own state requirements in its own state form. I was looking for something in the statute that says, and in addition to accepting and using the federal form, you can't ask for anything in addition. And that doesn't appear in the statute. And even the legislative history language that you point to doesn't really say that. It just says, we think it would be confusing if we put in the language that you can ask. So why isn't it consistent, or at least ambiguous, to say, yes, you have to accept and use, you can't require only the state form, you have to accept and use the federal form, but you can ask for additional information at that time? Your Honor, the statute is not ambiguous on that point. In Section 4A1, where it says states shall accept and use the federal postcard, the language that follows in Section 4A2, in addition to meeting the requirements of 4A1, in addition to this baseline requirement to accept and use the federal form, the state may then go ahead and make its own voter registration form to use by mail. So there is a legislative history, certainly, Your Honor, that in talking about the federal form and what it should contain, Congress considered the citizenship question. It decided that the citizenship issue should be addressed with attestation and checkbox. The accept and use language, which I'm questioning. I mean, I can say, I'm a store. I'll accept and use your credit card. But I also want to see your driver's license in order to make sure you're the person in the credit card. So I guess I'm having trouble seeing why the accept and use language excludes an additional requirement. In this context, accept and use means accept and use to process for voter registration. If the state accepts it, only receives it, but then rejects it because it doesn't have additional information required by state statute, that isn't accept and use. Certainly, the plain meaning of the word shall, shall accept and use, means they are required to accept it and use it, not to receive it and reject it, which is what's going on right now. If I might use, Your Honor, just one minute to talk about the equal protection disparate treatment claim that we have. Proposition 200 is built to single out naturalized citizens and make it more difficult for them to register to vote. It automatically rejects applicants who follow the instructions to provide the number of the naturalization certificate, forcing them to reapply. It requires in-person presentation of the naturalization certificate. Nothing anymore. There was a transition period where they made that mistake, and they've changed it. So, I mean, from now on in, it's... I'm sorry, Your Honor. The requirement is to provide the A number, isn't it? No, Your Honor, we disagree. First of all, and there are four quick points on this. First, not all naturalized citizens have access to their alien registration number. As the court found in its opinion, people who naturalized before 1975 often do not have the A number printed on their naturalization certificate and have to turn in the alien registration card at the time of naturalization and thus would not have access to this number. But they don't have to use that number, right? They can use any of the other forms of identification, or is that a requirement? No, Your Honor, it is not. But those people who are subject... So it's just an additional way to comply with the proof of citizenship. You can bring their citizenship certificate, right? You can make an in-person presentation, which is different than the option that is afforded to native-born citizens of mailing in a photocopy of the birth certificate. With respect to the use of the naturalization... You can't send a photocopy of the citizenship certificate because it's illegal to copy under federal law? The court made that finding, Your Honor, and also found that only five counties of Arizona's 15 counties will accept a photocopy because of the writing in the statute, presentation, and because of the Secretary of State's procedures manual, which, if you look at, still says presentation. Quickly, Your Honor, the only people who experience this automatic rejection and double registration requirement are naturalized citizens. Even if all naturalized citizens aren't forced to use their naturalization certificate, those who are subjected to the discrimination are all naturalized citizens. Or all pre-75 naturalized citizens. With respect to the language of the statute, everybody is instructed under the statute to provide the number of the certificate of naturalization. The change to the A number is incomplete, Your Honor. If you go today to the Secretary of State's website, How to Register to Vote in Arizona, it has been updated to reflect the name of the new Secretary of State, but it still says provide the number of the certificate of naturalization. So the change is incomplete both at the state level and at the county level. I thought the new certificates had the A number as the certificate of naturalization. Yes, they do. But the change to ask for the A number is incomplete, Your Honor. Counties still announce the need to put the number of the certificate of naturalization. They still post on their website forms asking for the number of the certificate, which can't be confirmed. But I thought, I just answered this question, I thought that post-75, the A number is the certificate of naturalization. No, Your Honor, I'm sorry, that is not correct. The certificate of naturalization always has the certificate number on it. But it has the A number as well. In addition, it has the A number. The question is whether people understand that there has been a rule change to ask for the A number for the more recent people. And because the Secretary of State's website is still talking about the number of the certificate, because counties are still posting on their websites the request for the number of the certificate, this change has never been fully implemented. Under Forest Guardians, Your Honor, we would assert that even if the court were to find that there was some kind of remediating or intervening change, that we are entitled to declaratory relief. The statute is still built to reject, force automatic rejection for naturalized citizens, and we would like that issue determined. I think your counsel is getting impatient. Thank you, Your Honor. I can see the signs of impatience there. Thank you, Your Honor. John Greenbaum, representing the Intertribal Council of Arizona Appellants. I'm going to address the two issues that we raised on appeal. The NVRA issue. Move that mic back so it's pointing at your mouth. Okay. The NVRA issue and the poll tax issue. Really quickly, going back to supplement my co-counsel's or my colleague's argument on the NVRA, the legislative history did say that it would be inconsistent with the act and unnecessary to allow states to ask for proof of citizenship as part of the registration process. So Congress was clear that it did not want the states to ask for proof. Well, the legislative history had those statements. Congress just enacted the statute. That's correct. Congress enacted the statute, but looking at the legislative history, it made clear that it would be inconsistent and unnecessary with the purpose of having this national uniform system of registering voters to allow states to have the discretion to provide for proof of citizenship. And the Election Assistance Commission followed that in terms of rejecting Arizona's request that proof of citizenship be allowed as part of the form. And really quickly, secondly, it has been the practice of the circuit for the most part when a decision is made at the preliminary injunction stage, that that isn't considered law of the case. And in some cases, later on in the same case, the circuit has gone back, and like in the South Oregon Barter Fair case, the circuit's gone back and ruled differently than it ruled when it did on preliminary injunction. Absolutely. Law of the case is not your problem. Law of the case is quite a flexible doctrine in many ways. But you've still got law of the circuit. Right. It's a published opinion which adopted an interpretation of the statute, which is then binding on us and binding on every other panel. And that's a much stronger and less flexible doctrine than law of the case. Your Honor, I believe that was also the case in the South Oregon Barter Fair case, that it was in part a legal issue that was decided earlier on and then later on in granting plaintiffs initially a preliminary injunction. And then after trial, later on, after trial, the trial court went the other way and the circuit court affirmed that. I wanted to move quickly to the poll tax argument. The proof of citizenship requirements in Proposition 200 and in the implementing documents for Proposition 200 constitute a poll tax because they do not provide a cost-free document available to everybody, available to everyone who's eligible, in order to establish that they are citizens and that they have identity. Last year, the Supreme Court in Crawford case made clear that what saved the Indiana statute, the photo identification statute in Indiana, was the fact that there was a cost-free way document that voters could get, go to the polls, prove their identity, and vote. But didn't the court also note that you would have to provide proof of your identity in order to get this free photo ID and that there would be charges associated with the documents to get the new photo ID? And the court had no problem with that. Isn't that analogous to this case? No, it isn't, Your Honor, because in that case they actually had the free ID. They actually made the free ID available. But you had to show documents in order to get it. Here you don't need to get an ID. You just show your documents. The Supreme Court, well, in Indiana as well, there were documents that you could show. So that's in order to be able to vote. The Supreme Court did distinguish between those documents that you need to show the election official and those documents that may be documents that you then need to provide to get the document to show the election official. The Supreme Court said that the former is a poll tax and that the latter is not. There are a lot of costs. Aren't we in sort of the latter category, the sorts of documents that are analogous? Actually, Your Honor, I believe we're in the former category. There's no additional ID that the Prop 200 requires your clients to get, right? There isn't an additional ID that is required provided that you have one of the other documents. But there are certain voters that may not have those documents. They refer to it as a primary document. To obtain a photo ID card, a person must present at least one primary document, which can be a birth certificate, certificate of naturalization, U.S. veteran's photo ID, U.S. military photo ID, or U.S. passport. In Indiana, the court points out charges of fee for obtaining a copy of your birth certificate. And that seemed to be acceptable. Aren't those the same sort of primary documents at issue here? No, they aren't, Your Honor. The Supreme Court, they were the ones who drew the distinction between the documents that you need to hand to the election official in order to vote, that there's a constitutional value in having a free means to be able to do that. Whereas the Supreme Court was not troubled, or at least the majority of the Supreme Court was not troubled, by the fact that you may need to pay for documents to get that document. So when you talk about the majority, what are you talking about? Oh, I'm sorry. I'm talking about Justice Stevens' opinion. The one that he wrote for himself and the Chief Justice, Justice Kennedy, and nobody else joined? Right. There were three judges that found that there was a poll tax. Was this a five-judge Supreme Court? Yes, Your Honor. There were three judges that found that there was a poll tax. So there's not a majority. Last I checked my math, my arithmetic, three was not a majority of nine. Well, there were three other dissenting justices, Your Honor, that were troubled by – So you have to piece together what Justice Stevens said with what the dissenters say. That's correct, Your Honor, and you get to six. So far with Judge Ikuta, you've talked about the one, the Justice Stevens' opinion, and that's debatable as well. Where is it that the dissenters have discussed this issue? The other three found it was a constitutional violation. So they don't reach this issue at all. They don't even reach the statute. They talked about it in terms of the fundamental right to vote, but clearly one of the issues they found it was a severe burden because of the costs that were associated with voting, which included the cost of obtaining that identification. They were troubled by it. We're interpreting the statute here, right? And they never reach a statute. They are talking about they resolved the case on constitutional grounds. I would say it's at least a stretch, maybe a wide stretch to say to add up a majority there. I mean, all I can say is you've got three justices who seem, you know, subject to the discussion here with Judge Ikuta where this seemed to be an issue. Well, I'll say this much, Your Honor. There are six justices. If Indiana did not make available a free ID, there are six justices that would have found a violation, a constitutional violation. For different reasons. That's correct, Your Honor. I want to reserve the remainder of time for my co-counsel. Forty seconds. Okay. We'll hear from the other side. May it please the Court. My name is Mary O'Grady. I represent the state defendants in this action, and I will be dividing my time with Mr. Willinchick, who is counsel for 12 of Arizona's 15 counties. I am going to attempt to leave him five minutes to address the Court. Unfortunately, you don't have to worry about rebuttals. Okay. Two of these issues that the plaintiffs raise on appeal have already been addressed by this Court, as the prior discussion has highlighted with regard to the NVRA preemption issue, and the Court need not revisit and should not revisit its prior ruling in this case. The poll tax issue was also. I would say that you'd argue that we cannot do it because it's law of the circuit, right? Your Honor, yes. You cannot revisit that. That issue has been decided for this circuit. We have other cases, though, that do say that we have the discretion. I think it's like South Tahoe was one. Let's say we have the discretion to address these issues when it's the same case or it's an earlier opinion in the same case, provided that there's not a Ninth Circuit case that's relied on the published opinion, and that's the situation here. Jeffries was one. Tahoe Sierra was another. And Mendenhall. So what do we do about those which say if it's clearly erroneous and sometimes and manifest injustice and some say or manifest injustice, then we do have the discretion to bypass it. Why shouldn't we exercise our discretion in this case where it does appear that the prior panel may have misread the statute? Your Honor, two principles. First, I think the law of the case, law of the circuit principles, prevent the court from rehashing the same issues over and over again. Well, not if it's clearly wrong. Let's assume it's clearly wrong on this one national voting rights issue. We can proceed, can we not? If it's clearly wrong and on a legal issue, I think it's hard to meet that standard on this kind of an issue. Well, that's true except the statute says each state shall accept and use the federal form, period. Then it says in addition to accepting that form, the state can go on and do certain other things. Now, suppose we think that's pretty clear. It looks pretty clear to me. Two points. But the lower court didn't quite read it that way. We think the court should follow and must follow its prior decisions, but I would like to address the merits. Let me address, if I could, the issue of whether it is clearly wrong and it's not. Do those cases talk in terms of law of the circuit? Your Honor, I believe the cases were law of the case, which is a more flexible doctrine. But if I could get to the heart of the matter, if the court, in reviewing its responsibilities regarding that earlier decision, and we're going to consider the merits of the argument, the prior panel got it right. This court did get it right in its prior decision. We do accept and use the form, but we do require that they also meet the criteria of Arizona law, and nothing in the NVRA suggests that states cannot do that. States do make determinations under the language of the NVRA regarding the eligibility of the voters who have submitted their voter registration forms. They do have the authority to make decisions regarding the disposition of these voter registration forms. Accept and use does not mean that everyone who completes the form and turns it into a county recorder for registration is instantly registered. The counties and the state, nothing in the NVRA deprives them of the authority to make sure that those people are eligible to vote. Well, it's not instant registration. So, for example, if somebody put on the form, I'm not a citizen or I'm under 18 or whatever those checkboxes are, then you would not register that person. The question is whether there was any indication in the statute that a state could impose an additional registration requirement. When you read the whole statute, it's clear that they wanted the postcard to do the trick. And they have a language in GG2 that says, notwithstanding any other federal or state law, each state shall register voters to vote by mail application as described in GG4, and that's the one that says shall accept and use. So that seems to say, notwithstanding any state law, the state shall register voters to vote by mail application per the federal form. How do we get around that and say, well, the state can add whatever additional requirements it wants to the federal form registration? Your Honor, two points I think are important. It's the language in GG7B1 that talks about state election officials assessing the eligibility of the applicant, and that's all that we are doing here is establishing procedures whereby our election officials determine whether they are indeed eligible to vote. But doesn't the EAC already do that in the federal form by saying you have to attest, you have to sign under penalty of perjury, and there's the language that says your subject defines your penalties, and the EAC's determination that's enough to do it? How does the state have the authority, not in their own state form, but placing an additional burden with the federal form? Your Honor, I think at that point you step back and apply preemption principles. Is there an actual conflict with the language here? Is there evidence that Arizona's law is an obstacle to achievement of the federal goals of that act? Is there an actual conflict? And I think the answer to that question is no. You do agree that if Arizona had an additional requirement, let's say, for example, to be a homeowner, you couldn't do that, right? Yes, Your Honor. Yes, Your Honor. We could not do that. We could not do that. You could not do that. I agree with that statement. So do I understand your position to be that this is really not an additional requirement, that the requirements already exist in the federal law, and this is just a way for the state to verify the existence of that requirement, the satisfaction of that requirement? That's right, Your Honor. The federal law and the NVRA talks about registering eligible citizens, and this is our state process for determining and making sure that people who register to vote are eligible, are citizens eligible to register to vote. And nothing in the language of the NVRA prohibits states from requiring that additional information to make sure that they're eligible citizens. What information does Arizona require besides the federal form? Your Honor, for some voters, they may not have to present any information other than what's on the federal form. Yeah, but what about the ones who aren't? They don't like the form, they want something else. What else do they want and can they get? When they submit their voter registration form, if they don't have their driver's license on it and if their driver's license was issued or if their driver's license was issued before 96, because even the federal form requires a driver's license. So for some, they won't have to do anything more. If they don't provide a driver's license, or for some reason their driver's license doesn't satisfy Arizona state law requirements, they may have to provide some other evidence of citizenship, such as the naturalization number that's been discussed or the naturalization papers, birth certificate, or something else that shows that they are eligible to vote. Again, because nothing in the NVRA deprives the state of the authority to make sure that those registering to vote are indeed eligible to register to vote. Do the 2002 amendments make a difference here? The Help America Vote Act? Your Honor, I think that has some helpful indications as to what Congress is... Which way does it cut? What do those amendments do? Well, HAVA itself requires some verification of the driver's license, of the information on the form. So again, it speaks to the fact that Congress doesn't prohibit verification principles. That's at the polling place though, right? Isn't there the allow? HAVA allows a person to submit proof of citizenship when they register, but it's not required, only at the polling place. Is that right? Your Honor, it imposes some identification requirements for people who register by mail. The first time they vote, there's some identification requirements at the polling place. But there are also some verification processes up front with the driver's license that HAVA permitted. And it also has some language that nothing... I'm sorry, I didn't understand your answer. Does HAVA affect registration or not? It did have some language in there requiring the driver's licenses and, I believe, regarding the verification of information on the... At time of voting or time of registration? At the registration, I believe. And then there are some ID requirements for people who register by mail. There are ID requirements at polling and there are some additional requirements at registration. Checking last row numbers of the social security number, the driver's license, right? Yes, Your Honor. Yes, Your Honor. In which way does that cut? I think HAVA would reinforce that Congress supports the verification principles and it also has some language that nothing in HAVA prohibits states from imposing requirements that are more strict than federal law in terms of... So it has some language there that reinforces the role of the states. But I think... If they authorize or require checking certain data, why isn't that best rather saying that's what they authorize and require and the state can't do any more, can't require any more? Your Honor, because I think, again, you step back and look at preemption principles. And usually there's a presumption against preemption. You look at whether the language that Congress enacted prohibits states and whether there's an actual conflict with what Congress has enacted. If states require eligibility of proof of eligibility for registering to vote, proof of citizenship, as Arizona does. So is there an actual conflict? And as this Court previously concluded, nothing in the language of the NVRA, which was the focus of the analysis, suggests that states can't still require this eligibility, impose this sort of eligibility requirement. Should we look at the legislative history that opposing counsel was citing, which rejected the language from the, I guess it was the Senate side, that would have allowed the state to ask for additional information? How should we consider that? Your Honor, we think the statutory language is plain and so it need not consult legislative history. And at the end of the day, it's the analysis of the language that Congress did enact that's going to control the preemption analysis. And what we have is a statute that's silent on the preemption issue in terms of the NVRA. And so we analyze, is there an actual conflict? And the answer is no. States make decisions regarding the disposition of the voter registration forms, make sure that the people registering are indeed eligible to vote. And so, again, there's no actual conflict. Turning to the poll tax issue, again, this is another issue that the Court addressed in its decision on preliminary injunction. And Crawford didn't change the law on poll tax. Crawford was not a poll tax case. Crawford, as the Supreme Court analyzed it, was an undue burden applying the analysis of Burdick and Anderson. And Arizona's law really is no different in terms of the burden it imposes or certainly no greater in terms of the burden it imposes on voters. And plaintiffs raised an undue burden Crawford-type claim in this case. They lost on that claim in the district court, and they did not appeal that as part of this decision. I don't read Justice Stevens' opinion as concluding that this was a poll, Indiana's law was a poll tax, or but for some opportunity to obtain a free voter ID, Indiana's law would have been a poll tax. Again, there are costs associated with complying with Indiana's law. Footnote 17 in the Crawford decision pointed out that you may, and as the Court previously discussed, you may need to present some documents that may cost some money in order to get the state-provided identification. But Arizona doesn't require a photo ID to vote. We have a whole host of ID that will satisfy those requirements. The one sentence they pull from Crawford that's really the basis of their urging the Court to reexamine the poll tax issue is the sentence that says if voters already possess a valid ID of some sort, a valid photo ID, but then the state requires voters to pay a tax or a fee to obtain a new photo identification, then you may have a problem under Harper. And although I think we can all speculate as to exactly what that means, but what I think that's saying is that if everyone has a driver's license, if the state passes a law that says we're going to make everyone pay $3 to get a new photo identification if they want to vote, then that may be a poll tax under Harper because it looks less like an identification requirement, a good faith identification requirement related to voter qualifications than sort of a disguised poll tax. And I think that's all that that sentence means if you analyze it in the context of the opinion that really looks at whether it's an undue burden on the right to vote. I see that I'm within my five minutes, the time that I have reserved for the counties, and unless there are further questions, I will cede the time now. Thank you. Thank you. Thank you. May it please the Court. Dennis Mullencheck on behalf of 12 of the 15 Arizona counties. I just want to close basically by pointing out a couple of things that I've heard here, perhaps in clarification. Burdens, where we just left off, I just want to make it clear from our perspective that, as has been stated in cases such as Washington State versus Grange, if a statute imposes only modest burdens, then the state's important regulatory interests are generally sufficient to justify reasonable, non-discriminatory restrictions on election procedures. It's our position as the counties that what the counties are doing is done in a non-discriminatory fashion, going toward the very issue that we just heard of voter qualifications, which would be distinguishable, Your Honor, from your question, I think, about the homeowner situation, because clearly requesting information about homeownership, I can't fathom, being a reasonable relation or correlation to voter qualifications. So I don't think that would be appropriate for that probable reason. Well, HAVA added a requirement, the checkbox, swearing to citizenship, right? I'm sorry, Your Honor? The checkbox? HAVA. Yeah. Added the requirement that the checkbox would then require the person filling out the form to swear under a penalty of perjury to citizenship. Right. And that itself is a pretty strong constraint, because people, you know, if they swear falsely, they could be subject to prosecution, and certainly if they swear falsely, they come up for citizenship later. If they're not citizens and they come up for citizenship, somebody can pull out the form, and this kind of a lie would be a big problem for them. Well, yes. They likely would not get citizenship. Well, that's certainly a good point. However, I would answer that by saying, basically, that if you presume that the government has a right to check on identity after the fact, wouldn't it make more sense to check on it before the fact? So if that right exists, such as you're pointing out, to determine later on that somebody has, you know, lied on a form, then certainly that right would, it seemed to me, be logical to exist prior to the time that they accept the form, which would, from the county standpoint. Well, the right, as you call it, I'm not sure government entities have rights. Rights are only things applied to people. But if anybody has authority to impose consequences for falsely lying on the form, it's the federal government. The state of Arizona could not. I don't know. Actually, now that I've formulated the question, I ask myself, if somebody lies on this form, I mean, outright lies, you know, not a question of legal interpretation, could Arizona prosecute for filing that form? I think they can, and they had in the past. At the trial, I think there was evidence. Even though it's a federal form because it's filed as part of a state registration process. I believe that's correct. Okay. As I say. Okay. I have not thought about that. Yeah. And also, I just want to point out a couple of quick things with my time that were stated here. Every county, and this is important to us, every county that has a printable form on their websites is using the new form. It's my understanding. And this came out at trial. And there's a link of the ones that aren't to the Secretary of State's site, which has the new form as well. And the testimony, as I recall it in the record on this point, was based right after the new form was pre-cleared by the Justice Department. And so they hadn't yet been printed in the new counties or at that moment in time used. The bottom line to this is, as far as I know, contrary to what was stated, the forms that are disseminated are the correct forms. And we do accept, the counties do accept the federal form, although, as you know, as you've stated, we require proof of citizenship on top of that as well. And, again, the only point to this being this, in conclusion, the counties are trying to wrestle with the issue of voter fraud, which was one of the issues on the remand, talking about Justice Stevens' opinion, that was asked to go into. And we proved, we felt, that there were real instances of voter fraud, and there doesn't necessarily need to be, but we proved that there was. And, therefore, from the county standpoint, it's an important requirement to avoid that very problem. And so, certainly, in our society, in conclusion, there are going to be certain burdens attached, necessarily, to showing ID. But no more than when I walked in here and I had to show my ID. These are things in society today that are not a great burden, given the prophylactic effect on this issue that the counties are concerned with in this modern era of voter fraud. Thank you very much. Thank you. May I have 69 seconds, Your Honor? Okay. Thank you. On the NVRA, my colleague, Ms. O'Grady, said, this is our state process. The NVRA preempts the state process of voter registration with respect to the federal form. It imposes a federal process to use and accept. In this limited way, this is not about what the state can do with its own state form in our NVRA claim, but merely accept and use the federal form. Yes, Judge Kaczynski, HAVA did add the citizenship checkbox to the federal form, but also said, importantly, that it does not supersede any other part of the NVRA. Arizona does not have discretion when it comes to the way that they process federal postcards. Nothing prohibits Arizona to have the additional eligibility requirements under the NVRA, but with respect to the federal form, they must accept it. It is a basic issue of preemption. The Ninth Circuit has already found the NVRA constitutional and enforceable voting rights coalition versus Wilson. We would also commend the court to Charles Wesley Foundation versus Cox, which is an Eleventh Circuit case involving a law in which Georgia was refusing to process federal forms, and it was preempted by the NVRA, and also Diaz versus Cobb, Southern District of Florida. Your Honor, with my remaining ten seconds, if I might refer the court with respect to the record on whether or not estates have made the complete change over to asking to the alien registration number. The record at trial, Maricopa County, Pima County, Pinal County, Santa Cruz County, and Greenlee County, continue to post registration forms on the web asking for the naturalization certificate number. Thank you. Thank you. Case argument stands submitted. Thank counsel for a very fine argument. We are now adjourned.
judges: O'connor, Kozinski, Ikuta